UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE MIERS,<br><br>                Plaintiff,<br><br>  v.<br><br>CABOT OIL & GAS CORPORATION, DAN O. DINGES, DOROTHY M. ABLES, RHYS J. BEST, ROBERT S. BOSWELL, AMANDA M. BROCK, PETER B. DELANEY, W. MATT RALLS, and MARCUS A. WATTS,<br><br>                Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff George Miers ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Cabot Oil & Gas Corporation ("Cabot" or the "Company") and Cabot's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Cimarex Energy Co. ("Cimarex").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement to be filed with the Securities and Exchange Commission ("SEC") on June 30, 2021 (and as amended on August 13, 2021, the "S-4"). The S-4 recommends that Cabot stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Cabot is acquired by Cimarex. The Proposed

1

Transaction was first disclosed on May 24, 2021, when Cabot and Cimarex announced that they had entered into a definitive merger agreement (the "Merger Agreement"). The deal is expected to close in the fourth quarter of 2021. Cimarex stockholders will own approximately 50.5% of the combined company, while Cabot stockholders will own approximately 49.5% of the combined company.

3. The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, the financial projections prepared by Cabot's and Cimarex's respective managements, and the financial analyses conducted by J.P. Morgan Securities LLC ("JPMorgan"), Cabot's financial advisor.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to Cabot's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Cabot.

6. Defendant Cabot is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at Three Memorial City Plaza, 840 Gessner Road, Suite 1400, Houston, Texas 77024. Cabot's common stock trades on NYSE under the ticker symbol "COG."

7. Defendant Dan O. Dinges has been a director of the Company since 2001 and Chairman of the Board, President, and CEO since 2002.

8. Defendant Dorothy M. Ables has been a director of the Company since 2015.

9. Defendant Rhys J. Best has been a director of the Company since 2008.

10. Defendant Robert S. Boswell has been a director of the Company since 2015.

11. Defendant Amanda M. Brock has been a director of the Company since 2017.

12. Defendant Peter B. Delaney has been a director of the Company since 2018.

13. Defendant W. Matt Ralls has been a director of the Company since 2011.

14. Defendant Marcus A. Watts has been a director of the Company since 2017.

15. Defendants Dinges, Ables, Best, Boswell, Brock, Delaney, Ralls and Watts are collectively referred to herein as the "Board" or "Individual Defendants."

16. Nonparty Cimarex is a Delaware corporation with its principal executive offices located at 1700 Lincoln Street, Suite 3700, Denver, Colorado 80203. Cimarex common stock trades on NYSE under the ticker symbol "XEC."

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

18. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

19. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

20. Cabot explores oil and gas properties and produces natural gas in the Marcellus Shale in Pennsylvania. Almost all of the natural gas produced by Cabot is sold at market prices, mainly to power generation facilities, distribution companies, gas marketers and industrial customers in the northeastern United States. The Company has adopted a strategy of focusing on financial returns that exceed the cost of capital and returning capital to stockholders. In 2020, Cabot generated $109.1 million in free cash flow, which the Company uses to reduce debt levels, enhance liquidity and return capital to stockholders. More than $159 million of capital was returned to Cabot stockholders in 2020.

21. On May 23, 2021, the Company entered into the Merger Agreement with Cimarex.

22. According to the press release issued on May 24, 2021 announcing the Proposed Transaction:

> **Cabot Oil & Gas and Cimarex Energy to Combine in All-Stock Merger of Equals**
>
> *Creating a Premier, Diversified Energy Company with a Strong Free Cash Flow Profile; Positioned to Deliver Superior and Sustainable Returns*
>
> **HOUSTON and DENVER, May 24, 2021 – Cabot Oil & Gas Corporation ("Cabot") (NYSE: COG) and Cimarex Energy Co. ("Cimarex") (NYSE: XEC)** today announced that they have entered into a definitive agreement whereby the companies will combine in an all-stock merger of equals. The combination will bring together two industry-leading operators with top-tier oil and natural gas assets to create a diversified energy leader that is positioned to drive enhanced free cash flow generation and returns for investors through market cycles.
>
> Under the terms of the agreement, which has been unanimously approved by the

Boards of Directors of both companies, Cimarex shareholders will receive 4.0146 shares of Cabot common stock for each share of Cimarex common stock owned. The exchange ratio, together with closing prices for Cabot and Cimarex on May 21, 2021, reflects an enterprise value for the combined companies of approximately $17 billion. Upon completion of the transaction, Cabot shareholders will own approximately 49.5% and Cimarex shareholders will own approximately 50.5% on a fully diluted basis.

"The combination of Cabot and Cimarex will create a free cash flow focused, diversified energy company with the scale, inventory and financial strength to thrive across commodity price cycles," Dan O. Dinges, Chairman, President and CEO of Cabot. "The combined business will be overseen by an experienced Board and a management team that is committed to a prudent strategy built on disciplined capital investment, strong free cash flow generation and increasing returns to shareholders. With its premier assets, increased resource diversity and a strong financial foundation, the company will be well positioned to deliver long-term value creation for its shareholders and other stakeholders."

"This transformational merger will combine our top-tier assets and advance our shared focus on delivering superior returns for investors," said Thomas E. Jorden, Chairman, President and CEO of Cimarex. "We're building an even more resilient platform with greater financial strength in order to deliver sustainable, through-cycle returns on and of capital. We view commodity, geography and asset diversification as strategic advantages that will drive more resilient free cash flow and long-term value creation. We are aligned on our commitment to ESG and sustainability and look forward to bringing our talented teams together to unlock the tremendous potential of this compelling combination."

**Strategic and Financial Benefits of Creating a Free Cash Flow Focused, Diversified Oil & Gas Producer**

- **Premier Multi-Basin Exposure Will Enhance Scale, Diversity and Capital Optionality:** With Cabot's approximately 173,000 net acres in the Marcellus Shale and Cimarex's approximately 560,000 net acres in the Permian and Anadarko basins, the combined business will have a multi-decade inventory of high-return development locations in the premier oil and natural gas basins in the United States.

- **Attractive and Sustainable Free Cash Flow Profile:** Executing a disciplined capital allocation and reinvestment strategy, the combined business will be positioned to capitalize on its high-quality assets and diversification to drive through-cycle free cash flow generation across a wide range of commodity price scenarios. The company's low-cost and capital efficient inventory is expected to support its robust, cumulative free cash flow outlook of approximately $4.7 billion of free cash flow from

>    2022 to 2024 based on $55 per barrel WTI oil prices and $2.75 per MMBtu NYMEX natural gas prices.
>
> - **Positioned to Accelerate the Return of Capital to Shareholders:** The combined business will be well positioned to deliver enhanced capital returns to shareholders across a full range of market conditions through a multi-faceted program offering a sustainable base dividend that is positioned to grow over time, a variable dividend and a special dividend. The new business is expected to have an annual base dividend of $0.50 per share (representing a forward dividend yield of 2.8%), which is paid quarterly and plans to supplement the base dividend with a quarterly variable dividend to achieve a target capital return of at least 50% of quarterly free cash flow, with the first payment expected in the first quarter of 2022. The combined business also plans to declare and pay a $0.50 per share special dividend to all common shareholders of the combined business promptly after the closing of the transaction.
>
> - **Substantial Cost Saving Opportunity:** The companies are targeting annual general and administrative cost synergies of $100 million beginning within 18 months to two years following the closing.
>
> - **Strong Balance Sheet:** The combined business is expected to have a strong capital structure with minimal near-term debt maturities and a low cost of capital. Upon closing, the combined business is anticipated to have pro forma liquidity of $2.2 billion and will target a net debt-to-EBITDAX ratio of less than 1.0x. This strong financial foundation and broader scale is expected to provide flexibility and optionality for capital deployment.
>
> - **Commitment to ESG and Sustainability:** Cabot and Cimarex share commitments to environmental stewardship, sustainability and strong corporate governance. The combined business will build on the two companies' ongoing ESG efforts by, among other things, continuing to link executive compensation to ESG performance and maintaining strong board oversight of ESG risks and programs. The combined business is expected to report sustainability metrics pursuant to SASB and TCFD standards.

**Headquarters, Leadership and Governance**

The combined business, which will operate under a new name, plans to be headquartered in Houston and maintain its regional offices.

Upon closing, Mr. Dinges will serve as Executive Chair of the Board of Directors of the newly combined business and Mr. Jorden will lead the company as CEO and will serve on the Board of Directors. Scott Schroeder, Cabot's current Chief Financial Officer, will serve as CFO of the combined business. The remainder of

the company's leadership team will include executives from both Cabot and Cimarex.

The Board of Directors of the company will be composed of five directors from the current Cabot Board of Directors, including Mr. Dinges, and five directors from the current Cimarex Board of Directors, including Mr. Jorden.

**Timing and Approvals**

The transaction is expected to close in the fourth quarter of 2021, subject to regulatory clearance, the approval of Cabot and Cimarex common shareholders and the satisfaction of other customary closing conditions.

Both Cabot and Cimarex intend to continue paying base quarterly cash dividends through closing.

### B. The Materially Incomplete and Misleading S-4

23. Defendants filed the S-4 with the SEC on June 30, 2021 (amended on August 13, 2021). The purpose of the S-4 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

*Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

24. The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of JPMorgan's fairness opinion, JPMorgan reviewed "certain internal financial analyses and forecasts prepared by or at the direction of the managements of Cabot and Cimarex relating to their respective businesses." Accordingly, the S-4 should have, but failed to, provide certain information in the projections that Cabot's management provided to the Board and JPMorgan.

25. Notably, Defendants failed to disclose the line items underlying the calculation of EBITDAX and Free Cash Flow (Pre-Dividend) for Cabot and for the Cimarex Corporate Forecast Adjusted by Cabot. The S-4 also fails to disclose the unlevered free cash flows for Cabot. Furthermore, the S-4 fails to disclose the line items underlying the calculation of EBITDAX and Unlevered free cash flow for Cimarex and for Cabot, as prepared by Cimarex. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning JPMorgan's Financial Analyses*

26. With respect to the *Public Trading Multiples Analysis,* the S-4 fails to disclose the multiples for Cabot FV/2021E EBITDAX, Cabot FV/2022E EBITDAX, Cabot FV/2021E OCF, Cabot FV/2022E OCF, Cimarex FV/2021E EBITDAX, Cimarex FV/2022E EBITDAX, Cimarex FV/2021E OCF and Cimarex FV/2022E OCF for the selected companies.

27. With respect to the *Discounted Cash Flow Analysis,* the S-4 fails to disclose the terminal values for Cabot and Cimarex. The S-4 also fails to disclose the basis for selecting perpetual growth rates of 1.50% to 2.50% for Cabot and 2.00% to 3.00% for Cimarex. Furthermore, the S-4 fails to disclose the basis for selecting discount rates of 8.25% to 9.25% for Cabot and 9.50% to 10.50% for Cimarex, as well as the weighted average cost of capital for Cabot and Cimarex, respectively. Finally, the S-4 fails to disclose the net debt and other adjustments for Cabot and Cimarex as of March 31, 2021.

*Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

28. The S-4 also fails to disclose material information concerning the sales process. While the S-4 states that Cabot had informal and preliminary discussions over the past several years with other exploration and production companies, very little is disclosed about those

discussions. Indeed, while the S-4 states that its "engagement [with other companies] has included preliminary discussions about the potential for strategic combinations, acquisitions, joint ventures and other strategic transactions," only discussions with three parties—Cimarex, Company A and Company B—are disclosed. And even those disclosures omit crucial information.

29. For example, at a meeting on September 11 and 12, 2019, the Board decided to pursue a strategic combination with another exploration and production company in an all-stock transaction. The S-4 states that from that time through April 2020, Defendant Dinges contacted several potential counterparties, including Company A and Company B. Besides Company A and B, no other information is provided about the number of potential counterparties that were contacted, what parties had engaged in discussions with the Company concerning a strategic transaction, or even if any parties entered into confidentiality agreements with Cabot. This is despite the S-4 stating that the Cabot Board received updates on strategic combinations discussions and activities and that Cabot's senior management "continued to analyze and engage in preliminary discussions with representatives of other [exploration and production] companies regarding potential strategic transactions."

30. The information about Cabot's discussions with other potential counterparties is crucial to stockholders because the Proposed Transaction is structured so that Cabot stockholders own a minority of the shares of the combined company. That is, the Proposed Transaction is essentially a reverse merger. Yet Plaintiff has not been provided with critical information about whether the process leading to the Proposed Transaction was fair and if the Defendants acted in good faith.

31. Consider that a representative of Cimarex's financial advisor had discussions with Cabot's Chief Financial Officer at the end of 2020 about the Company's "strategic thinking in a

volatile and constantly changing macro environment." That representative "suggested" to Cabot's CFO that Cabot and Cimarex consider a combination. The S-4 is silent as to whether the Cabot CFO disclosed these conversations to Defendant Dinges or the Board. In addition, the S-4 provides no other information about that representative's role in advising Cimarex on the Proposed Transaction, or in the negotiations between TPH and JPMorgan, or in preparing the fairness opinion. The S-4 also provides no information about whether TPH provided any services to Cabot before rendering its fairness opinion to Cimarex, and if so what compensation was received for those services. Finally, the S-4 does not disclose whether the representative of TPH that suggested a combination of Cabot and Cimarex received any compensation for that suggestion.

32.     The TPH representative's suggestion worked, as the CEO of Cimarex contacted Defendant Dinges on January 15, 2021 to discuss a potential combination of the two companies. The two men met two weeks later and then on February 5, 2021, to discuss a transaction. At a regularly-scheduled Cabot Board meeting on February 17, 2021, Cabot's management informed the Board on discussions with Cimarex and two other companies. The S-4 provides no information about those two other companies or the discussions with those companies. Instead, from that point on the S-4 only provides information on discussions between Cimarex and Cabot.

33.     The Board was not updated on nor discussed a potential combination with Cimarex until April 28, 2021. In the three months between Board meetings, Cabot provided financial forecasts to Cimarex (although the S-4 does not disclose whether the Board approved the sharing of financial forecasts), Defendant Dinges discussed with Cimarex's CEO potential post-transaction employment for himself and other Cabot executives, and that the increase in Cimarex's share price had impacted valuation and organizational structure of any combined company. While the S-4 states that Defendant Dinges "recapped all discussions with Cimarex that occurred to date"

10

at the April 28, 2021 Board meeting, the S-4 does not disclose whether the Board approved of Defendant Dinges' employment discussions with Cimarex, approved of Defendant Dinges engaging in further discussions with Cimarex concerning post-transaction employment, or if the Board was aware of how Cimarex's share price would impact the structure of the transaction and overall ownership of the combined company.

34. Defendant Dinges did continue to discuss his own post-transaction employment with Cimarex, as well as the post-transaction employment of other executives at Cabot. The S-4 fails to disclose whether the Board was informed of those discussions when it approved the Merger Agreement.

35. And while the companies' legal advisors discussed the structure of the Proposed Transaction, the S-4 does not disclose whether the Board was aware that it was essentially selling the Company when JPMorgan "reviewed structural issues and objectives for the potential transaction" and the Board discussed "alternative transaction structures" at the Board meeting on May 12, 2021. Or when the Board received updates on discussions between the legal and financial advisors from that point until approving the Merger Agreement. Because while the Board was kept updated on the terms of the merger agreement and the transaction structure, it is not clear from the S-4 that the Cabot Board understood that the Proposed Transaction would mean that Cabot stockholders would be minority owners of the combined company.

36. In fact, according to the S-4, it is not until May 21, 2021 that the companies discussed the ownership percentages of the combined company. That day, the Board agreed that the Proposed Transaction was "more attractive to Cabot than either remaining as a stand-alone company or pursuing other acquisition or strategic combination opportunities." Even if the Merger Agreement structures the Proposed Transaction as an "acquisition" by Cabot, in reality Cabot

stockholders will not be the majority owners of the combined company—Cimarex stockholders will control the company. And that places a different burden on the Board in terms of ensuring that the Proposed Transaction is fair to Plaintiff and the other Cabot stockholders.

37. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff was not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

38. In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

39. Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

40. Further, the S-4 indicates that on May 23, 2021, JPMorgan reviewed with the Board its financial analysis of the Proposed Transaction and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Proposed Transaction was fair, from a financial point of view, to Cabot stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning JPMorgan's financial analyses which has been omitted from the S-4, and thus knew or

should have known that such information has been omitted.

41. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Defendants have filed the S-4 with the SEC with the intention of soliciting Cabot stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

44. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Cabot, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9

because it omits material facts concerning: (i) the sales process; (ii) management's financial projections; and (iii) the financial analyses performed by JPMorgan in support of its fairness opinion.

47. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that JPMorgan reviewed and discussed its financial analyses with the Board on May 23, 2021, and further states that the Board relied upon JPMorgan's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

48. The misrepresentations and omissions in the S-4 are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Cabot within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cabot and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

53. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

B. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 15, 2021　　　　　　　　　　**ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*